# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

---

m 00-50841
Summary Calendar

---

LINDA L. GINN,

Plaintiff-Appellant,

VERSUS

TEXAS WIRED MUSIC, INC.,
DOING BUSINESS AS MUZAK SYSTEMS OF SAN ANTONIO,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Western District of Texas
(SA-99-CV-553)

---

March 22, 2001

Before SMITH, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Linda Ginn appeals a summary judgment in her case against Texas Wired Music, Inc., doing business as Muzak Systems of San Antonio ("Muzak"). The district court concluded that Ginn had not provided sufficient evidence to go to a jury on her claims that (1) she was subjected to a hostile work environment on the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.

[*](...continued)
47.5.4.

bases of sex and age and (2) she was constructively discharged. The court also concluded that Ginn was barred from bringing a race discrimination claim, because she had failed to exhaust her administrative remedies.[1] Finding no error and that Ginn submitted insufficient evidence to withstand summary judgment, we affirm, essentially for the reasons stated by the district court in its comprehensive order of August 10, 2000.

I.

Ginn was an employee in Muzak's accounting department for sixteen years before resigning. She states that the harassment began in July 1995, when Robert Vega, a twenty-nine-year-old male, was hired as her supervisor. Ginn complains that Vega criticized her on an almost daily basis in regard to her work, attitude, initiative, creativity, and behavior toward coworkers. She also complains that he made fun of and demeaned her. She claims that Vega often called her "darlin'" and "Linda Louise"[2] and that he thought she was stupid. Ginn also asserts that she was demoted from Administrative Assistant to Accounting Clerk and denied a pay increase.

The events leading to Ginn's resignation occurred on May 23, 1997, ten days after she had received a poor performance evaluation from Vega. On that day, Vega and another accounting department employee, David Valles, began moving their desks into recently vacated offices. Ginn heard the commotion and stood up to see what was going on. Apparently, her face registered consternation at seeing Valles being moved into an office while she was still sharing space in a cubicle.

Ginn claims that when Vega saw her observing the furniture moving, "he came over to her, got right in her face, and asked her, in a hostile manner, 'what's the matter with you? Can't you take us moving a couple of desks?'" Vega told Ginn that he was "moving over here so [he could] keep an eye on [her]." Ginn avers that to avoid saying something she might later regret, she decided to leave the office for the day. She says that Vega followed her and shouted, "This is grounds for termination." He also asked her "are you going to be back?" Ginn responded that she was not quitting.

Ginn called in sick the next two working days. Vega sent hand-delivered letters to her home both days, informing her that she should call him, that she must provide a doctor's verification that she was ill, and that the first order of business on her return would be to discuss the events of May 23. On May 30, the president of Muzak received Ginn's letter of resignation, in which she requested that he instruct Vega to "cease attempting to contact her and/or harass her."

Ginn claims that Vega's sex and age discrimination is evidenced by the fact that he kept notes that were critical of her and of Rosie Smith, an older white female, but not critical of Valles,[3] a young male, or of Lori Hernandez, a young female hired in 1997 when

---

[1] Ginn concedes this point in her brief on appeal.

[2] Ginn's middle name is not "Louise."

---

[3] According to Ginn, Valles had been hired in 1996 to assist Smith. Valles had both a bachelor's and master's degree in finance, whereas Ginn and Smith had no education beyond high school. Further, Valles was a salaried employee, whereas Ginn and Smith were hourly workers.

Smith quit.[4] Ginn concedes that Vega never made any comments based on her sex or age. In fact, the only comment Vega made related to sex or age was his statement before hiring Valles that he wanted to hire someone "young and right out of school."

## II.

We review a summary judgment *de novo*, applying the same standard as did the district court. Summary judgment is proper when the summary judgment record, viewed in the light most favorable to the nonmovant, establishes that there is no material fact issue, and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Drake v. Advance Constr. Serv., Inc.*, 117 F.3d 203, 204 (5th Cir. 1997).

## III.

The court correctly stated that to prove a hostile work environment claim based on age or sex, Ginn must show: (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex or age; (4) the harassment affected a term, condition or privilege of employment; and (5) the employer knew or should have known about the harassment and failed to take prompt remedial action. *Long v. Eastfield College*, 88 F.3d 300, 309 (5th Cir. 1996) "In order to be actionable, the challenged conduct must create an environment that a reasonable person would find hostile or abusive." *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 20-21 (1993)). "Whether an environment is hostile or abusive depends on a totality of circumstances, focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Id.* (citing *Harris* 510 U.S. at 22).

Although, as even Muzak admits, the work environment Ginn describes does not sound pleasant, the district court held that "[o]ther than one stray remark concerning the hiring of 'young blood' and the fact that Ms. Ginn's replacement was a male under the age of 40, there is no evidence that the harassment was based on plaintiff's membership in either protected class." Our repeated holding that "stray remarks" do not demonstrate age discrimination was addressed recently in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), which questioned this court's failure to draw all reasonable inferences in favor of the nonmovant in summary judgment cases. *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219 (5th Cir. 2000) (stating that "our pre-*Reeves* jurisprudence regarding so-called 'stray remarks' must be viewed cautiously.").

Nevertheless, even giving the "young-blood" remark the inference most favorable to Ginn, it shows only that Vega had a preference for hiring someone young and fresh from school, but not that he had animus toward Ginn based on her age, nor that his "harassment" of her was based on age or sex rather than simple personality conflict. This one comment by Vega by no means shows "(1) [sex or age] discriminatory intimidation, ridicule, and insults that are; (2) sufficiently severe or pervasive that they; (3) alter the conditions of employment; and (4) create an abusive working environment." *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir.

---

[4] Ginn alleges that Smith also quit because of sex and age discrimination.

3

2000).[5]

IV.

Ginn claims that she was constructively discharged. She provided no evidence, however, that she suffered an adverse employment action based on age or sex. She asserts that she was "demoted" from "Administrative Assistant" to "Accounting Clerk," even though there was no reduction in salary. She also claims she was denied a raise in 1997. While these claims, when tied to claims of age or sex-based harassment, can raise a triable issue of fact, Ginn has failed to do so here. She does no more than assert that her change of title was a demotion. Unsubstantiated assertions are not competent summary judgment evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).[6] Nor does the denial of a pay raise alone constitute "such an aggravated situation that a reasonable employee would be forced to resign." *Pittman v. Hattisburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1077 (5th Cir. Unit A May 1981).

As the district court noted, "[a] constructive discharge claim requires a 'greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment'" (quoting *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998) (quoting *Landgraf v. USI Film Prods.*, 968 F.2d 427, 429 (5th Cir. 1992))). The court correctly concluded that Ginn had not presented evidence that Vega made her working conditions so "intolerable that a reasonable employee would feel compelled to resign." *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000) (quoting *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir 1994)). As we previously have held, to prove constructive discharge, a plaintiff's "resignation must have been reasonable under all the circumstances." *Id.* Ginn's resignation was not.

AFFIRMED.

---

[5] Moreover, neither this remark nor any made by Vega shows any preference for male workers.

[6] *See also Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).